Three-part matter, Jeannie v. Liberty v. Royal Surplus Lines And while counsel are getting ready, we do have in front of us a cover sheet that is not an exhibit, but we presume just an aid to understanding people's arguments. And then we have some excerpts from the record as well to go with that. And so Counsel, feel free to begin whenever you're ready. Thank you, Your Honor. I'm going to try to reserve five minutes. Maybe I'll have better luck than I did last time. Better luck today than you did the other day. Ah, inside joke. We have some lawyers here. We've grilled you some. May it please the Court, my name is Michael King from the Talmadge firm, and with me at the counsel table is Mike Runyon from the Lane Powell firm. We're here for the defendant and appellant, Liberty Mutual. This insurance allocation case arose out of a truly awful highway accident, which resulted in a personal injury lawsuit embroiling, among other parties, the plaintiff and appellee Jeannie Industries. Jeannie settled the personal injury plaintiff's claims in what came to be called the Pierce action for $4 million. The total settlement amount paid by all the defendants was substantially higher and is the subject of an action that's presently pending in the Washington State trial courts. The appeal before you today arises out of a declaratory judgment action brought by Jeannie against three of its insurers, Federal, Royal, and our client, Liberty Mutual, to resolve the allocation of the settlement paid to settle the claims against Jeannie. Federal paid $1 million to Jeannie, leaving a balance of $3 million to be allocated. The district court resolved that allocation by ordering Liberty to pay all of it and also to pay some $200,000 in fees and expenses incurred by Jeannie under the authority of Washington's so-called Olympic Steamship Rule. Now, in this appeal, Liberty asked this court to do two things. Number one, reverse the district court's allocation to the extent of requiring that Royal pay a substantial portion of the $3 million, just how much turns on the resolution of a subsidiary issue regarding the application of the allocation formula to be used. And number two, reverse the district court's award of Olympic Steamship fees to Jeannie or, in the alternative, allocate those between Royal and Liberty using the same allocation formula that will allocate the $3 million. I'm going to address, I hope, both allocation and Olympic Steamship fees today and in that order. Turning to allocation. Resolving the allocation issue requires us to plunge into the world of other insurance clause law. And that law can be a nightmare journey, perhaps even rivaling the intricacies of federal immigration and sentencing law, which Your Honors apparently have to deal with. Maybe more like Pan's Labyrinth. Well, I'm hoping to give you a simplified guide to get out of Pan's Labyrinth. And I think we are fortunate that we are dealing with Washington law because the Washington Supreme Court has, I think, avoided many of the rococo and baroque problems that can be associated with the law by doing two things. Number one, Washington has made clear we're not going to parse the details of the language selected by the insurers. Once we decide that the contending policies are at the same level, primary versus primary, excess versus excess, we declare a mutual repugnancy and we allocate. Number two, Washington has also declared that subject to this overriding equitable principle of mutual repugnancy, we're going to try to vindicate the legitimate contract expectations of individual insurers. And this principle is perhaps best illustrated by the New Hampshire indemnity versus budget rent-a-car case, which we've talked a lot about in the briefs and I'm going to talk about more in a moment. I just want to flag here the point made in New Hampshire budget, as we refer to it, that we should recognize the enforceability of and we should give effect to the intent of the contracting parties. In other words, vindicate legitimate contractual expectations subject to the overriding principle of mutual repugnancy. Now, with these principles in mind, there are three points I want to touch on concerning the allocation issues. First, whether the district court erred in treating Royall's other insurance clause as a super escape clause under New Hampshire budget. Two, if the court did err, can its chosen allocation be saved by some alternative ground? And three, if the district court's allocation can't be salvaged, what should the allocation be? My biggest issue is your first one, which you're turning to now. But part of your argument in the brief seems to be that this clause is written a little differently than the clauses that have been held previously to be, you know, super excess, super escape, whatever you want to call them. I haven't got that lingo down. But as you point out, the real question is whether reasonable people reading their policy would know that it's a big excess, super escape clause. And I have difficulty seeing why this other insurance clause isn't that, where it pretty clearly says that it's excess over any other valid insurance, whether that other insurance is primary, excess, contingent, or anything else. We really mean it. What's wrong with that analysis? Liberty really means it, too. If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of such other insurance. Now, here's the problem. In New Hampshire budget, you had a clause that only becomes the functional equivalent of the Royal Clause if you rewrite it and take out critical language. Because if you look at the totality of the language of the clause in New Hampshire budget, here's what it says. It says if there's other insurance out there or non-insurance sources out there, we are not going to pay unless, this is the budget clause, unless one specific non-insurance condition is satisfied, and that is that it is necessary after everything else has been exhausted to meet this specific requirement under law of the minimum driver responsibility. That is a non-insurance condition. The budget clause is a classic super escape clause. As defined by the Washington Supreme Court in New Hampshire budget, and that's footnote two of the opinion, a super escape clause says if there's insurance out there it may not answer, but it technically covers, we're done. We don't pay a thing. The only limitation on that in budget is a function of the peculiarity of what rent-a-car agencies have to do in responding across state lines to so-called minimum responsibility laws. The only thing that triggers an obligation to budget under that clause is not if the insurance is exhausted and there's something left to pay, not if the insurance and the non-insurance sources are exhausted and there's something left to pay, but only if that something is the necessity to meet the minimum responsibility obligation. It is a non-insurance condition. So what you have is a classic super escape clause which is subject to a non-insurance condition. That's not Royall's clause. All of these excess clauses have this hortatory business about access over any of the other insurance, whether primary, excess, contingent, or any other basis. Well, yours isn't quite that like thing. It's different. And the suggestion is made that what you should do is think that the Washington Supreme Court is going to embrace this notion of super excess clauses. So we have excess clauses, super excess clauses, and super escape clauses. That's not consistent with the Washington law. That's not consistent with Pacific Federated. That's not consistent with this Court's understanding in Indiana v. Mission of the Washington law. If you go down that path, you're basically saying that Washington is going to plunge into Pan's labyrinth. And I would submit that that's not a reasonable reading of Washington law. Here's my problem. It looks to me when I take the budget case footnote 2 and I lay it alongside Royall's paragraph 3 on other insurance, it looks like they wrote it right out of the footnote that defines a super escape clause. I would say it's written right out of the part of the footnote that defines an excess clause. An insurer will pay a loss only after other available primary insurance. Well, here's what the super escape clauses are. One type of other insurance clause, which provide that insurance will not apply to any liability for loss that is covered by primary excess, contributory, or any other basis by other insurance. Will not apply. It's out of the picture. This one says is excess over any other valid and collectible insurance, whether primary, excess, contingent, or any other basis. I mean, it's very close. But then you have to drop down and you have to start reading when this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that succeeds the sum of the total amount that all such other insurance would pay for. Where are you? I'm farther down on ER 98, Your Honor. Oh, I'm on ER 115. Wait a minute. Excess insurance. Whose policy are you in? This is Royal's. This is Royal's. Okay, and you're on 90. 98, second column. This insurance is excess over any of the other insurance, whether primary, excess, contingent. That's the language they like. But then you have to drop down and talk about when it's excess. And the next paragraph, when this insurance is excess, we will pay only our share of. You see, they are not saying what a super excess clause says. A super excess clause says we're gone. If there's other insurance, you've got to hope that covers. We're out of here. That's what budget said with the proviso of, well, if this one non-insurance condition is satisfied, dealing with minimum responsibility laws, we'll pay that and only that. I see what you're saying. You're saying that that requires that the insurance not apply at all, not that it just be excess. That's right. That's what a super escape clause means. And we don't have that here. And so then we're left with the question, and I see I'm into my five minutes, let me just move on then to the question of alternative grounds. You don't have an alternative ground. The district court's alternative ground was to say, well, I think that the Royal clause is really specific because it talks about the, you know, exception G. Well, I can say that the Liberty clause is, you know, equally specific. It says nothing herein will be construed to make this policy subject to the definitions, terms, conditions, and exclusions of such other insurance. And I think the Washington Supreme Court, as this Court understood it, Indiana versus Michigan, said we're not going to go there. Once you've got excess versus excess, we're going to allocate. And that then brings me to allocation. And we get into this controversy. There's agreement that by agreement of the parties' contractual expectations, we're dealing with the pro rata policy limit approach. And Royal says, oh, well, it's only our first million. And that brings me to my chart and the materials behind it. Because I pointed out in the reply, well, Royal doesn't give you any authority for this. Now let me try to fill in any gap you may feel you have by giving you the authority the other way from the Royal policy. Royal wants you to think of its Royal 2 as some sort of excess to the excess. That would be fine if the only thing in the Royal 2 was a super escape clause, excuse me, an excess clause. They'd have an argument to that effect that we would be stuck in the allocation with taking just the first million of Royal and the four million of Liberty. But the problem is, and this is where these other materials come in, this is ER114. This is the excess liability insurance provision and the insuring agreement clause. And what does it say? We will, this is Royal 2, we will pay those sums in excess of the limit shown in Item 6 of the declarations, schedule of underlying insurance that you become legally obligated to pay as damages provided that the underlying insurance also applies. And then we have a definition, the next page, yellow highlighted. Underlying insurance means the policies listed in the schedule. And we have the next page. And what policies listed? Why Royal 1? In other words, if Royal 1 applies, whether it's exhausted or not, we're in the soup too. No ifs, ands, ors, or buts. That's their contractual expectation. That's why it's not the one million that goes into this allocation calculation. It's the 25 million. Indeed, it's probably the 26 million. Let me ask you a question about ER105 and the schedule of underlying insurance. Yes. The applicable limit in the third column refers to Royal 1. Yes. Because otherwise ER111 wouldn't make any sense. And, in fact, if you look at the insurer and you look at the number of the policy, Royal Surplus Lines Insurance Company, KHA, et cetera, if you go back through these documents, you will find that the Royal 1 policy is Royal Surplus Lines KHA 100126, et cetera. Before I turn, if at all, to the Olympic steamship point, I just wanted to suggest – I'm going to back off the suggestion that you try to parse and write out an alternative judgment. If you rule in our favor and you agree with us that we're right in the allocation formula, Royal is going to end up owing Liberty money. But given that we'll then be dealing with, well, allocation between the two Royals, pre-judgment interest, judgment interest rate, it probably makes more sense to remand and have the parties sort that out in front of the district court. As for Jeanne, with just over a minute left, I'd simply point out the district court grappled with this issue. So there's no good reason under waiver principles not to deal with it. And the public utility district case is clear. There is a limitation on Olympic steamship. Insureds must cut square corners. Prejudice isn't the issue because if there were prejudice about notice, we'd be off the indemnity hook. But if they don't cut square corners when it comes to notice, they don't get Olympic steamship fees. And these folks did not cut square corners. They had an obligation to Liberty to give us notice as soon as practicable if our policy might – the term was may – cover. And these folks said, well, empty head, white heart, just didn't occur to us. That's unreasonable. They should have put us on notice. They didn't put us on notice for three years. It's not a question of prejudice. It's a question of failure to cut square corners. And that wipes out their right to Olympic steamship. And I pretty much wiped out my time and hope I'll get a minute for rebuttal. Thank you. You will get a minute. Everybody else has gotten a minute. You will too. May it please the Court. My name is Russell Love. I'm here on behalf of Royal. I will take no more than ten minutes, Your Honor, and leave the remaining amount of time for Mr. Gellert on behalf of Genie. Your Honors, I think this Court is presented really with a simple case. The fact of the matter is that the Washington Supreme Court in the New Hampshire budget rent-a-car case determined that when there is a clause, a clause that has the same operative language as the Royal clause, that that clause is a super escape clause, that when you have a clause that is like, exactly like the Liberty clause with the same operative language, that is a simple excess clause, and that third, the super escape clause prevails over the simple excess clause. And quite simply, this presents this Court with an eerie situation, and this Court is required to follow, under the eerie doctrine, this Court is required to follow. But there's room for interpretation of what kind of clause specifically budget was referring to, because just to say, we know we're supposed to apply it. The question is, what does it mean in the context here? And the clause in your contract isn't exactly the same as the clause in budget, which doesn't mean we don't apply the principles. It just means it's a little harder. Yeah. What is your response to counsel's argument that the definition adopted in budget is that the insurance simply does not apply at all if the loss is covered by other insurance, as distinct from saying it's excess over? Because if you look at footnote 2, the definition, I'm giving you both a hard time, because I'm trying to make heads or tails of this. Super escape clauses are one type of other insurance clause, which provide that insurance will not apply to any liability for loss that's covered by primary excess, yada, yada, yada, other kinds of insurance. That's not what your clause says. It says this insurance is excess over others and has a method for determining how much to pay. Is there a significance to the difference between insurance that will not apply to any liability versus insurance that's excess? No. Not under the Washington Supreme Court's decision, Your Honor, because what essentially what Liberty is saying is that the does not apply language is critical here. However, when you look at it. That's what the footnote says. That's what the court is defining it. Except that, Your Honor, you need to go to what the court's holding in this case is, which is we hold that parties make contract for insurance coverage that only becomes available after all other insurance, including excess insurance, is exhausted. Now, the key words there, Your Honor, are only becomes available. So that's exactly the same. Which page of the budget, excuse me, which page of the budget opinion should I be looking at for the phrasing that you just gave me? Well, I don't have the, I have the, well, it's headnote 12. Okay. That's helpful. I do have it. It's page 8 of my printout from Westlaw. All right. It's page 936 of the decision starting there. Okay. Thank you. It looks like it's page 1242 of the Pacific Third, 64 Pacific Third at 1242, Your Honor, I believe. Okay. All right. Now, the point, Your Honor, is that the court's holding where it says that the insurance, that the parties may contract for insurance that only becomes available after all other insurance, including excess insurance, is exhausted, means that that policy will apply after the exhaustion of the underlying coverage. So it simply underlines, Your Honor, that the does not apply aspect of the thing is simply not a relevant consideration. Moreover, if you look at footnote 5 of the court's decision, you will see that that budget explicitly argued to the Supreme Court that, well, under the situation here our coverage doesn't apply at all, and the court said we're not deciding that question, which means that the does not apply aspect of it is not essential to the court's holding. What the court's holding is, in essence, is that this, the language in the royal policy, says that it will be excess even of other excess coverage and that the court will respect that. And that's what the district court found in this case, and that's entirely consistent with what the Washington Supreme Court case says. Moreover, what the budget, if you look at the budget policy language, the budget policy language says that its coverage will not apply until after exhaustion of other coverage, which is the same thing as saying that it will be excess to the other coverage. So, Your Honors, the basic problem in this case is that Liberty Mutual is at war with the Washington Supreme Court. And, but that's not a proper basis for reversal of the district court's decision. This, the Erie requires that this court follow what the Washington Supreme Court did. Judge Peckman followed what the Washington Supreme Court did. And we ask that this court affirm. Thank you very much. Thank you. We will hear from Mr. Gilbert. Good morning, Your Honors, and may it please the Court. Jeannie got caught up in this battle between its insurers and had to contribute $500,000 toward the resolution of the Pierce matter. It has recovered that $500,000, and Liberty is not appealing that aspect of the district court's decision. At the same time that we moved for summary judgment on that underlying obligation of Liberty, we moved for summary judgment on a motion for award of attorney's fees under the Olympic Steamship Doctrine. Liberty did not oppose that motion on the basis of the PUD number one decision or the trip decision. And, in fact, prior to, while discovery was still underway, before the parties had moved, cross-moved for summary judgment, had dropped any affirmative defense based on alleged late notice or prejudice arising therefrom. After Judge Peckman ruled in our favor on the issue of fees, Liberty said, oh, wait a minute, wait a minute, we forgot about a case, surprisingly a case that they were involved in. They were counsel, Lane Powell was counsel, and Liberty was a party in the trip case that was only decided a few years earlier. And they said, oh, wait a minute, we forgot about this case, we want to move for reconsideration. So is it your argument, then, that it was waived or forfeited by the failure to raise it when it could have been known from the get-go? Yes. And waived for two reasons. One is they dropped the affirmative defense, and, second, didn't raise it in opposing our motion for summary judgment. Liberty, in her briefing, is adamant that Judge Peckman, on the motion for reconsideration, reached the merits of this PUD issue. But her order made very clear that she was, instead, saying that she wasn't going to allow Liberty to raise this issue for the first time on a motion for reconsideration, and only in the alternative reached the merits of the issue. Her order specifically, and this is at ER-221, says, Liberty's motion for reconsideration is an attempt to resurrect its previously withdrawn late notice affirmative defense. Liberty cannot reallege that defense at this stage of the litigation. And then she goes on. Moreover, and moreover at that point is dicta. She's already said she's not going to allow, under the Court's procedures, them to raise the issue at that late stage. Moreover, if you do reach the merits, we would submit that Liberty is over-reading the PUD number one decision and the TRIP decision. In TRIP, the Court made clear that it would not allow a policyholder to recover fees if what was being litigated was precipitated by the insured. That's not the situation here. What was being litigated was a dispute you just heard argument about, whether Liberty was obligated to pay first, a royal pay first, and having gotten caught up in that, whether Jeannie was entitled to recover its $500,000 from Liberty. The issue of late notice was not the issue that precipitated the litigation and that resulted in the incurrence of the fees that we collected. Thank you very much. Thank you, counsel. Mr. King, you are going to get your one minute. ER 98 is Royals' Excess Clause, and it says, this insurance is excess, et cetera, et cetera, et cetera. And then it says, when this insurance is excess, we will share the remaining loss, if any, and explains. That's an excess clause, not a super escape clause. Your Honor, I ask the question, well, isn't there a difference when you're talking about Yes, that's the fundamental point of a super excess clause. Couch describes it this way. Some other insurance clauses go further than excess clauses and declare that the insurer is not liable, that there is other valid and collectible insurance covering the risk. And if you look at 63 Pacific Second at 1242, referred to by counsel, what you'll see is a discussion there about, are we going to invalidate super escape clauses because they're against public policy for some reason? No. We're going to recognize legitimate contract expectations. And counsel says, ah, but footnote 5 is the answer. No, it's not, because all footnote 5 means is that in budget, budget rent-a-car hadn't made the record to establish whether the non-insurance condition had been triggered. Well, he also, in fairness, pointed to the text on page, well, I'm going by 936, but it's also 1242, I think. Right. Parties may, consistent with the law, contract for automobile insurance coverage that only becomes available after all other insurance available, including excess, is exhausted. So if that holding suggests that they're looking at clauses where there is some coverage but only at the very tail end. That sentence, if you pluck it out and look at it in that sequence of comments about the state of the law, could be read that way. But I don't think that's what Justice Sanders is driving at. He, in his footnote, in the overall structure of the opinion, in recognizing the difference between super escape clauses and their function and excess clauses, is talking about an issue of first impression, as he says. Are we going to recognize the enforceability of super escape clauses? Some jurisdictions don't. They talk about against public morals and against public policy. And he says at the end of all of that discussion, you know, we're going to enforce contract expectations. This is not against public policy or public morals, and I think his phrase is, whatever those may be. We have a pretty strict rule in this state. We will enforce legitimate contract expectations. Therefore, we don't have a problem with super escape clauses. Budget was a super escape clause. Royal says we're excess. And when we're excess, we will pay if there's something left over to pay, which means it's like liberty, which means there should have been an allocation, and we've discussed what the formula should be. And if there are no further questions, I think I'd be pressing the envelope to try to touch on the genie argument. Thank you very much. Okay. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of all counsel. We're going to take a short recess, maybe ten minutes or so. All rise. This court stands in recess. Thank you, counsel. Thank you, counsel. Thank you, counsel. Thank you, counsel. Thank you, counsel. Thank you. Thank you,
judges: Alarcon, Graber, Rawlinson